﻿Citation Nr: AXXXXXXXX
Decision Date: 12/19/18 Archive Date: 12/19/18

DOCKET NO. 180702-250
DATE: December 19, 2018
ORDER
Service connection for hypertension is granted. 
Service connection for obstructive sleep apnea (OSA) is granted.
Service connection for restless leg syndrome is granted. 
An initial disability rating of 70 percent, but no higher, for posttraumatic stress disorder (PTSD) is granted.
An effective date prior to August 31, 2016, for the grant of service connection for PTSD is denied.
For the rating period prior to June 3, 2011, a rating in excess of 20 percent for peripheral neuropathy of the right upper extremity is denied.
For the rating period prior to June 3, 2011, a rating in excess of 20 percent for peripheral neuropathy of the left upper extremity is denied.
For the rating period beginning June 3, 2011, a rating of 70 percent for peripheral neuropathy of the right upper extremity is granted.
For the rating period beginning June 3, 2011, a rating of 60 percent for peripheral neuropathy of the left upper extremity is granted.
For the rating period prior to June 3, 2011, a rating in excess of 10 percent for peripheral neuropathy of the right lower extremity is denied. 
For the rating period prior to June 3, 2011, a rating in excess of 10 percent for peripheral neuropathy of the left lower extremity is denied. 
For the rating period beginning June 3, 2011, a 40 percent rating, but no higher, for peripheral neuropathy of the right lower extremity is granted.
For the rating period beginning June 3, 2011, a 40 percent rating, but no higher, for peripheral neuropathy of the left lower extremity is granted.
REMANDED
Entitlement to special monthly compensation (SMC) based on the need for regular aid and attendance of another person is remanded.
Entitlement to a total disability rating due to individual unemployability (TDIU) is remanded.
FINDINGS OF FACT
1. The Veteran is presumed to have been exposed to herbicide agents in service as his service personnel records reflect that he served in the Republic of Vietnam during the Vietnam War Era. 
2. The National Academy of Sciences, in a 2018 update, concluded that there was “sufficient” evidence of an association between hypertension and herbicide exposure. 
3. The Veteran’s currently diagnosed OSA is secondary to symptoms associated with his service-connected PTSD disability.
4. The Veteran’s currently diagnosed restless leg syndrome is secondary to symptoms associated with his now service-connected OSA disability.
5. The Veteran’s PTSD results in occupational and social impairment with deficiencies in most areas, but has not more nearly approximate total occupational and social impairment.
6. VA received the Veteran’s initial claim for service connection for PTSD on August 31, 2016.
7. For the rating period prior to June 3, 2011, the Veteran’s bilateral upper extremity diabetic neuropathy has been manifested by no worse than mild symptoms.
8. For the rating period beginning June 3, 2011, the Veteran’s bilateral upper extremity diabetic neuropathy has been manifested by severe symptoms.
9. For the rating period prior to June 3, 2011, the Veteran’s bilateral lower extremity diabetic neuropathy has been manifested by no worse than mild symptoms. 
10. For the rating period beginning June 3, 2011, the Veteran’s bilateral lower extremity diabetic neuropathy has been manifested by moderately-severe symptoms. 
CONCLUSIONS OF LAW
1. The criteria to establish service connection for hypertension are met. 38 U.S.C. §§ 1110, 5107(b) (2012); 38 C.F.R. §§ 3.102, 3.303, 3.304. (2017).
2. The criteria to establish service connection for OSA as secondary to the service-connected PTSD disability are met. 38 U.S.C. §§ 1110, 5107(b) (2012); 38 C.F.R. §§ 3.102, 3.303, 3.310. (2017).
3. The criteria to establish service connection for restless leg syndrome as secondary to the now service-connected OSA disability are met. 38 U.S.C. §§ 1110, 5107(b) (2012); 38 C.F.R. §§ 3.102, 3.303, 3.310 (2017).
4. The criteria for a 70 percent rating, but no higher, for PTSD are met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 4.3, 4.7, 4.130, Diagnostic Code 9411 (2017).
5. The criteria for the assignment of an effective date prior to August 31, 2016, for the grant of service connection for PTSD are not met. 38 U.S.C. § 5110 (2012); 38 C.F.R. § 3.400 (2017).
6. For the rating period prior to June 3, 2011, the criteria for a rating in excess of 20 percent for peripheral neuropathy of the right upper extremity are not met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.124a, Diagnostic Code 8513 (2017).
7. For the rating period prior to June 3, 2011, the criteria for a rating in excess of 20 percent for peripheral neuropathy of the left upper extremity are not met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.124a, Diagnostic Code 8513 (2017).
8. For the rating period beginning June 3, 2011, the criteria for a rating of 70 percent for peripheral neuropathy of the right upper extremity are met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.124a, Diagnostic Code 8513 (2017).
9. For the rating period beginning June 3, 2011, the criteria for a rating of 60 percent for peripheral neuropathy of the left upper extremity are met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.124a, Diagnostic Code 8513 (2017).
10. For the rating period prior to June 3, 2011, the criteria for a rating in excess of 10 percent for peripheral neuropathy of the right lower extremity are not met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.124a, Diagnostic Code 8520 (2017).
11. For the rating period prior to June 3, 2011, the criteria for a rating in excess of 10 percent for peripheral neuropathy of the left lower extremity are not met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.124a, Diagnostic Code 8520 (2017).
12. For the rating period beginning June 3, 2011, the criteria for a 40 percent rating, but no higher, for peripheral neuropathy of the right lower extremity are met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.124a, Diagnostic Code 8520 (2017).
13. For the rating period beginning June 3, 2011, the criteria for a 40 percent rating, but no higher, for peripheral neuropathy of the left lower extremity are met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.124a, Diagnostic Code 8520 (2017).
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS
The Veteran had active duty service from December 1967 to July 1969.
This matter comes to the Board of Veterans’ Appeals (Board) on appeal from a rating decision issued in April 2018 by a Department of Veterans Affairs (VA) Regional Office (RO).
On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Veteran chose to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. This decision has been written consistent with the new AMA framework. 

Service Connection Laws and Regulations
Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active military, naval, or air service. 38 U.S.C. § 1110; 38 C.F.R. § 3.303 (a). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303 (d). Only chronic diseases listed under 38 C.F.R. § 3.309 (a) (2017) are entitled to the presumptive service connection provisions of 38 C.F.R. § 3.303 (b). Walker v. Shinseki, 708 F.3d 1331 Fed. Cir. 2013).
Establishing service connection generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). The U.S. Court of Appeals for Veterans Claims (Court) has held that “Congress specifically limits entitlement for service-connected disease or injury to cases where such incidents have resulted in a disability. In the absence of proof of a present disability there can be no valid claim.” Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992); see also Rabideau v. Derwinski, 2 Vet. App. 141, 143-44 (1992).
Service connection may also be granted for a disability that is proximately due to or the result of a service-connected disability. See 38 C.F.R. § 3.310 (a). The controlling regulation has been interpreted to permit a grant of service connection not only for disability caused by a service-connected disability, but for the degree of disability resulting from aggravation of a non-service-connected disability by a service-connected disability. See Allen v. Brown, 7 Vet. App. 439, 448 (1995). 
In rendering a decision on appeal, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57(1990). Competency of evidence differs from weight and credibility. Competency is a legal concept determining whether testimony may be heard and considered by the trier of fact, while credibility is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994); see also Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) (“although interest may affect the credibility of testimony, it does not affect competency to testify”).
When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the veteran prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102.
Hypertension
The Veteran is presumed to have been exposed to herbicide agents in service as his service personnel records reflect that he served in the Republic of Vietnam during the Vietnam War Era. 
VA regulations do not provide hypertension as a presumptive disability associated with herbicide exposure. However, the National Academy of Sciences (NAS), in 2006 and 2008 updates, concluded that there was “limited or suggestive evidence of an association” between hypertension and herbicide exposure. See 75 Fed. Reg. 32,540, 32,549 (June 8, 2010); 75 Fed. Reg. 81,332, 81,333 (December 27, 2010). 
In a recent 2018 update, the NAS found that there was “sufficient” evidence of an association between hypertension and exposure to Agent Orange and other herbicides used during the Vietnam War. 
Therefore, and according to the NAS, the sufficient category indicates that there is enough epidemiologic evidence to conclude that there is a positive association between hypertension and herbicide exposure. Accordingly, service connection for hypertension is warranted. 
Obstructive Sleep Apnea
The Veteran maintains that his OSA is related to his service-connected psychiatric disability. 
The evidence includes a June 2015 polysomnography test, conducted by Dr. Whitehead, which confirmed a diagnosis of OSA. 
The evidence also includes a medical opinion from Dr. Speiden. The doctor reviewed the claims file, to include medical peer-reviewed articles. Dr. Speiden then opined that the Veteran’s OSA was caused or was secondary to his service-connected PTSD disability. In this regard, the doctor indicated that the chronic stress of PTSD caused physical disorders and serious systemic diseases. Peer-reviewed research showed that there was a strong relationship between PTSD and OSA, in that PTSD disrupted the whole sleep system. 
The Board has reviewed the remaining evidence of record and finds that there are no other medical opinions that are contradictory to Dr. Speiden’s findings. Accordingly, and resolving reasonable doubt in the Veteran’s favor, service connection for OSA as secondary to the service-connected PTSD disability is warranted. 
Restless Leg Syndrome
The Veteran seeks service connection for restless leg syndrome. 
The June 2015 polysomnography test, conducted by Dr. Whitehead, indicated that the Veteran had periodic limb movement disorder. Dr. Whitehead recommended medical therapy for his limb disorder. 
VA treatment records show that the Veteran has been diagnosed with restless leg syndrome and has been prescribed medication. A July 2015 VA note indicated that Dr. Whitehead had indicated that “restless leg syndrome was caused by sleep apnea.” 
The Board has reviewed the remaining evidence of record and finds that there are no other medical opinions that are contradictory these findings. Accordingly, and resolving reasonable doubt in the Veteran’s favor, service connection for restless leg syndrome as secondary to the now service-connected OSA disability is warranted. 

Laws and Analysis for PTSD Disability Rating
Disability ratings are determined by applying the criteria set forth in VA’s Schedule for Rating Disabilities. The percentage ratings are based on the average impairment of earning capacity and individual disabilities are assigned separate diagnostic codes. 38 U.S.C. § 1155; 38 C.F.R. § 4.1 (2017). If two evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that evaluation; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2017). Any reasonable doubt regarding a degree of disability will be resolved in favor of the veteran. 38 C.F.R. § 4.3 (2017). 
Under Diagnostic Code 9411, a 50 percent rating is assigned for occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped, speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short and long term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships. Id.
A 70 percent disability rating is assigned for occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech that is intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately, and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); and inability to establish and maintain effective relationships. Id.
A 100 percent disability rating is assigned total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; and memory loss for names of close relatives, or for the veteran’s own occupation or name. Id.
In applying the above criteria, the Board notes that, when it is not possible to separate the effects of the service-connected disability from a nonservice-connected disability, such signs and symptoms shall be attributed to the service-connected disability. See 38 C.F.R. § 3.102; Mittleider v. West, 11 Vet. App. 181 (1998) (citing Mitchem v. Brown, 9 Vet. App. 136, 140 (1996) (the Board is precluded from differentiating between symptomatology attributed to a nonservice-connected disability and a service-connected disability in the absence of medical evidence which does so)).
In determining the level of impairment under 38 C.F.R. § 4.130, a rating specialist is not restricted to the symptoms provided under the diagnostic code, and should consider all symptoms which affect occupational and social impairment, including those identified in the DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (DSM-IV or DSM 5). See Mauerhan v. Principi, 16 Vet. App. 436 (2002). If the evidence demonstrates that a claimant suffers symptoms or effects that cause an occupational or social impairment equivalent to those listed in that diagnostic code, the appropriate, equivalent rating is assigned.
Effective August 4, 2014, VA amended the regulations regarding the evaluation of mental disorders by removing outdated references to DSM-IV. The amendments replace those references with references to the recently updated “DSM-5.” As the Veteran’s claim was pending before the agency of original jurisdiction (AOJ) on or after August 4, 2014, the DSM-5 is applicable to this case.
The evidence includes a February 2017 VA PTSD examination. During the evaluation, the Veteran stated that he had been married for 45 years and had 3 children. He indicated that he enjoyed spending time with his grandchildren and stated that he had excellent family support. Current symptoms were noted to include depressed mood, anxiety, nightmares, night sweats, road rage, anger, lack of motivation, and disturbance of motivation and mood. However, the examiner indicated that the Veteran did not meet the criteria for PTSD as he reported no feelings of depression and appeared to be in a pleasant mood. The Veteran did report nightmares, but no other symptoms of anxiety. The examiner diagnosed the Veteran with nightmare disorder. 
Despite the lack of PTSD diagnosis by the February 2017 VA examiner, the RO granted service connection for PTSD and assigned a 30 percent rating effective August 31, 2016. The Board will not disrupt the RO’s favorable finding, particularly in light of the fact that VA treatment records show some indication of PTSD symptomatology. See e. g., November 2017 VA psychosocial assessment (noting DSM 5 impression of “PTSD, anxiety, anger”). 
The evidence also includes a December 2017 evaluation from Dr. Speiden, a licensed clinical psychologist. During the evaluation, the Veteran reported that, when he was employed, he had serious on-the-job conflicts including hitting a co-worker with a sling blade. Dr. Speiden noted that the Veteran lacked psychological insight into his PTSD, which had caused him to misunderstand and under-report his symptoms. Dr. Speiden further noted that the Veteran experienced episodic homicidal impulses and had repeated road rage. After a review of the claims file, Dr. Speiden opined that the Veteran’s PTSD disability had been severe from at least August 2016 and caused occupational and social impairment in most areas, including work, family relations, judgment, thinking, and mood. 
Upon review of all the evidence of record, both lay and medical, the Board finds that the evidence is at least in equipoise as to whether the criteria for a higher rating of 70 percent is warranted, as the Veteran’s PTSD symptoms more nearly approximate occupational and social impairment with deficiencies in most areas, such as work, judgment, thinking, and mood. As discussed in detail above, the Veteran has experienced depression, anxiety, impaired impulse control with periods of violent, anger, sleep impairment, homicidal ideation, impaired judgment, and disturbance of motivation and mood. Notably, Dr. Speiden specifically opined that the Veteran’s PTSD disability had been severe from at least August 2016 and caused occupational and social impairment in most areas, including work, family relations, judgment, thinking, and mood. Accordingly, and resolving reasonable doubt in the Veteran’s favor, the Board finds that a 70 percent disability evaluation is warranted for the entire initial rating period on appeal.
The Board further finds that, for the entire rating period on appeal, the Veteran’s PTSD does not more nearly approximate a 100 percent disability evaluation. The Board finds that weight of the lay and medical evidence shows that his symptoms do not demonstrate total social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; and memory loss for names of close relatives, or for the veteran’s own occupation or name. See 38 C.F.R. § 4.130.
Further, although the Veteran has been found to have some difficulty with social interactions, he has remained married for over 40 years and has indicated a strong and supportive relationship with his family. The Board finds that this does not rise to the level of total impairment. For these reasons, the Board finds that a rating in excess of 70 percent for PTSD is not warranted.
Effective Date Claim for Grant of Service Connection for PTSD
In general, the effective date of an award based on an original claim for benefits is based on the filing of a claim for such benefits. 38 U.S.C. § 5110; 38 C.F.R. § 3.151. See Wells v. Derwinski, 3 Vet. App. 307 (1992). Benefits are generally awarded based on the date of receipt of the claim. 38 C.F.R. § 3.1 (r), 3.400. 
Governing regulations provides that the effective date will be the day following separation from active service or the date entitlement arose, if the claim was received within one year after separation from active duty; otherwise the effective date will be the date of receipt of the claim or the date entitlement arose, whichever is later. 38 C.F.R. § 3.400 (b)(2)(i). All effective date determinations must be based upon the facts found, unless otherwise specifically provided. 38 U.S.C. §§ 5101, 5110; 38 C.F.R. § 3.400.
In this case, the Veteran initially filed a claim for service connection for PTSD on August 31, 2016. In a March 2017 rating decision, the RO granted service connection for PTSD effective August 31, 2016, the date of the Veteran’s claim for service connection. In his Notice of Disagreement, the Veteran did not provide any details as to why he believed the effective date should have been assigned prior to August 2016. 
A review of the remaining evidence of record does not show any other correspondence by the Veteran that may be construed as a formal or informal claim for service connection for a psychotic disorder prior to August 31, 2016.
In sum, the earliest indication that the Veteran wished to pursue a claim for service connection for a psychiatric disability was the statement provided on the August 31, 2016 statement. Thus, the preponderance of the evidence is against the Veteran’s claim for an earlier effective date for the grant of service connection for PTSD and the benefit sought must be denied.
Upper Extremity Peripheral Neuropathy Disability Rating
The Veteran is currently in receipt of 20 percent ratings for his right and left upper extremity radiculopathy effective October 22, 2009. The Veteran maintains that higher ratings are warranted. 
The Veteran’s upper extremity neuropathy has been appropriately rated under Diagnostic Code 8513 for paralysis of all radicular nerve groups. Under Diagnostic Code 8513, a 20 percent evaluation is assigned for mild incomplete paralysis of all radicular groups in the major or minor extremity. Moderate neuropathy warrants a 40 percent evaluation for the major extremity, and a 30 percent evaluation for the minor extremity. Severe neuropathy warrants a 70 percent evaluation for the major extremity, and a 60 percent evaluation for the minor extremity. With complete paralysis of all radicular groups in the major extremity, a 90 percent evaluation is assigned, and an 80 percent evaluation is assigned for the minor extremity.
The Board notes that the record reflects the Veteran is right hand dominant; i.e., his right side is the major upper extremity.
The evidence includes an October 2009 VA neurological examination. During the evaluation, the Veteran reported intermittent numbness in the palms. He denied trouble with buttons or laces. The Veteran was diagnosed with mild incomplete sensory loss in the feet, but no diagnosis was provided regarding the upper extremities. 
During an August 2010 VA neurological examination, the Veteran reported numbness in his palms and difficulty with buttons and laces. After performing a sensory examination, the examiner indicated that the Veteran had subjective complaints of sensory loss, but no findings of motor or sensory deficits due to neuropathy in the hands. 
In a September 2011 VA general medical examination report, it was noted that the Veteran voices subjective complaints of neuropathic discomfort in the hands and in the upper back, but no objective findings were found. 
In a June 2012 VA diabetic polyneuropathy examination report, the examiner specifically indicated that the Veteran had “mild” incomplete paralysis of the radial median, and ulnar nerves. 
The Veteran submitted a private medical examination from Dr. Hitchcock dated in June 2014. Dr. Hitchcock reviewed the relevant medical evidence of record and discussed the previous VA examination findings, including the Veteran’s statements regarding the severity of symptomatology. Dr. Hitchcock then opined that the Veteran’s upper extremity radiculopathy was of mild severity period to June 3, 2011, and was severe as of June 3, 2011. The Board finds the private medical opinion highly probative as the report thoroughly discussed all the evidence of record. 
During an August 2014 VA peripheral nerves examination report, the examiner noted that the Veteran had “mild” incomplete paralysis of the right and left median nerves. 
Upon review of all the evidence of record, the Board finds that the evidence demonstrates that the Veteran’s upper extremity neuropathy was of mild severity prior to June 3, 2011. This sis supported by VA and the 2014 private medical evaluation of records. Beginning June 3, 2011, the Board finds that the evidence is at least in equipoise as to whether a 70 percent rating for the right upper extremity, and a 60 percent rating for the left upper extremity is warranted. As indicated by Dr. Hitchcock, the Veteran’s symptoms were severe as of June 2011. For these reasons, higher ratings are warranted beginning June 3, 2011. 
Lower Extremity Peripheral Neuropathy Disability Rating
The Veteran is currently in receipt of separate 10 percent ratings for his right and left upper extremity peripheral neuropathy prior to June 28, 2012, and in excess of 20 percent thereafter. The Veteran maintains that higher ratings are warranted. 
The relevant Diagnostic Code affecting the sciatic nerve is Diagnostic Code 8520. Under Diagnostic Code 8520, a 10 percent rating is warranted for mild incomplete paralysis, a 20 percent rating is warranted for moderate incomplete paralysis, a 40 percent rating is warranted for moderately severe incomplete paralysis; a 60 percent is warranted for severe incomplete paralysis with marked muscular atrophy; and an 80 percent, the maximum available, is warranted for complete paralysis, the foot dangles and drops, no active movement possible of muscles below the knee, flexion of knee weakened or (very rarely) lost.
The evidence of record, both prior to and after June 2012, show continued complaints of numbness and tingling in the feet. See October 2009 VA examination report; see also August 2010 VA examination (examiner indicated that sensory examination showed evidence of mild incomplete sensory loss in the feet). During a September 2011 VA general medical examination, the Veteran reported numbness in his feet and was diagnosed with distal polyneuropathy without significant functional limitation. 
In a June 2012 VA examination, the examiner indicated that the Veteran had “moderately severe” incomplete paralysis of the right and left sciatic nerve roots; however, in a separate part of the report, the examiner stated that the Veteran had “mild to moderate” incomplete sensory loss in the feet. 
The Veteran submitted a private medical examination from Dr. Hitchcock dated in June 2014. Dr. Hitchcock reviewed the relevant medical evidence of record and discussed the previous VA examination findings, including the Veteran’s statements regarding the severity of symptomatology. Dr. Hitchcock then opined that the Veteran’s lower extremity radiculopathy was of mild severity period to June 3, 2011, and was moderately-severe as of June 3, 2011. The Board finds the private medical opinion highly probative as the report thoroughly discussed all the evidence of record. 
During an August 2014 VA peripheral nerves examination report, the examiner noted that the Veteran had “mild” incomplete paralysis of the right and left median nerves. 
The Veteran was afforded another VA examination in August 2014. At that time, the Veteran was noted to have “moderate” incomplete paralysis of the right and left sciatic nerve roots.
Upon review of all the evidence of record, the Board finds that the evidence demonstrates that the Veteran’s lower extremity neuropathy was of mild severity prior to June 3, 2011; this is supported by VA and the 2014 private medical evaluation of records. Beginning June 3, 2011, the Board finds that the evidence is at least in equipoise as to whether higher separate ratings of 40 percent for the right and left lower extremities are warranted. As indicated by Dr. Hitchcock, the Veteran’s symptoms were moderately-severe as of June 2011. For these reasons, a higher rating is warranted beginning June 3, 2011. 

REASONS FOR REMAND
TDIU
The Veteran is seeking entitlement to a TDIU based on his service-connected disabilities, which now include hypertension, OSA, and restless leg syndrome. As such, the TDIU claim is inextricably intertwined with the Board’s grant of service connection for these disabilities and the pending assignment of their corresponding rating percentages by the AOJ. Consideration of the TDIU must be deferred pending implementation of the awards granted herein.
SMC - Aid and Attendance
The Veteran has not been afforded a VA examination in connection with his request for SMC benefits based on the need for regular aid and attendance that properly considers all his service-connected disabilities, to now include OSA and restless leg syndrome. As such, a remand is required.
The matter is REMANDED for the following actions:
1. Schedule the Veteran for an examination by an appropriate clinician to determine the nature and etiology of his hypertension disability. After examining the Veteran and reviewing the claims file, the examiner is asked to:
(a.) Opine whether it is at least as likely as not related to service, to include exposure to Agent Orange. In providing the above opinion, the examiner should consider the NAS 2006 and 2008 updates which concluded that there was “limited or suggestive evidence of an association” between hypertension and herbicide exposure. See 75 Fed. Reg. 32,540, 32,549 (June 8, 2010); 75 Fed. Reg. 81,332, 81,333 (December 27, 2010).
(b.) A complete rationale for all opinions should be provided.
2. Schedule the Veteran for a VA Aid and Attendance examination. The examiner should address whether the Veteran’s service-connected disabilities result in disability (physical or mental) requiring the regular aid and attendance of another person to assist with activities of daily living such as dressing and undressing, keeping herself ordinarily clean and presentable; feeding; attending to the wants of nature; frequently adjusting of any special prosthetic or orthopedic appliances which by reason of the particular disability cannot be done without aid; or protecting him from hazards or dangers incident to his daily environment.
3. The Board’s decision herein granting service connection for hypertension, OSA, and restless leg syndrome should be implemented by the AOJ, including assigning disability ratings and effective dates. The Veteran and his representative should be properly notified thereof and of his appellate rights. 

4. Then, readjudicate the claims on appeal. 
 
S. B. MAYS
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD R. Casadei, Counsel